UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| AARON MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:21-cv-436 |
| | ) |
| R.W. HARPER & SON, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Comes now the plaintiff, Aaron Marshall ("Mr. Marshall"), by counsel, pursuant to Rule 8 of the Federal Rules of Civil Procedure, and states as follows for his Complaint against the defendant, R.W. Harper & Son, Inc. ("RWHS").

## JURISDICTION AND VENUE

1. Federal jurisdiction for bringing actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., is proper pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction for all civil actions arising under the laws of the United States.

2. This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367(a).

3. Mr. Marshall exhausted his administrative remedies with respect to each and every claim set forth in this Complaint by filing a discrimination charge with the Virginia Division of Human Rights and the Equal Employment Opportunity Commission identifying RWHS and generally describing the actions alleged in this Complaint. The EEOC issued Mr. Marshall a Notice of Rights with respect to this charge and Mr. Marshall now files this Complaint within 90 days of receiving the Notice.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), and Local Rule 3(B)(4) because a substantial part of the events or omissions giving rise to this claim occurred in this District and within the Richmond Division.

## PARTIES

5. Mr. Marshall was an "employee" of RWHS within the meaning of Title VII of the Civil Rights Act of 1964 as set forth in 42 U.S.C. § 2000e.

6. RWHS was Mr. Marshall's "employer" within the meaning of Title VII of the Civil Rights Act of 1964 as set forth in 42 U.S.C. § 2000e.

## FACTS

7. Mr. Marshall began working for RWHS as a laborer in 2020.

8. RWHS, for all relevant times, had at least 15 employees.

9. Mr. Marshall is a black male. He is a member of a protected class.

10. Around late May and early June of 2020, as protests raged around the country in response to the death of George Floyd, Mr. Marshall and his coworkers began to notice an environment of racial hostility developing at RWHS.

11. Specifically, Mr. Marshall witnessed an increase in the use of racial slurs in the work environment.

12. One white coworker remarked to Mr. Marshall, referring to his black coworkers, that "niggers aint worth hiring." The coworker also told Mr. Marshall that he should not associate with the other black employees at work.

13. Mr. Marshall discussed the racial hostility that he had experienced with his black coworkers. He and his black coworkers had all heard racial slurs at work, such as "nigger," "spook," and "boy," being directed against the black employees.

14. Mr. Marshall, along with two of his black coworkers, reported the discrimination they had experienced to Sonny Branch ("Mr. Branch"), also a black man and a foreman.

15. Mr. Branch addressed the concerns of the black employees with his superiors at RWHS.

16. Mr. Branch's superiors did not give him any assurances that the racism experienced by Mr. Marshall and his coworkers would be addressed. Mr. Marshall is not aware of any white employee being disciplined for their racial hostile conduct.

17. Prior to Mr. Marshall complaining to his superiors about the growing racial hostility at the workplace, he had never received any notice that he performed his job in an unsatisfactory manner.

18. Mr. Marshall and his coworkers were also subjected to discrimination in the form of adverse work conditions aside from being subjected to racial slurs.

19. Mr. Marshall and his black coworkers were given less hours compared to white laborers in the same position.

20. Mr. Marshall and his black coworkers were not given keys to the equipment yard, making it necessary for them to obtain the assistance of white coworkers to obtain the equipment necessary to clock in each day.

21. Mr. Marshall and his black coworkers were often sent home when it rained, meaning that they would not be paid, while their white coworkers were given indoor tasks to complete and allowed to remain working.

22. The racial hostility at RWHS culminated with a physical attack upon Mr. Branch by one of his white coworkers on June 18, 2020.

23. Upon information and belief, this attack was motivated directly by Mr. Branch making complaints about racial hostility to his superiors on behalf of Mr. Marshall and his similarly situated coworkers.

24. Immediately proceeding the attack, Mr. Marshall heard the attacking coworker shout, "this nigger makes more money than me." He then punched Mr. Branch in the head without warning, causing Mr. Branch to suffer a significant injury.

25. The attack occurred on video and Mr. Marshall reported to the superiors at RWHS that the attacker had used a racial slur during the attack.

26. RWHS did not terminate the employment of the employee who attacked Mr. Branch, despite the attack being overtly racially motivated.

27. Due to the attack on Mr. Branch, Mr. Marshall and at least three other black employees refused to return to work with RWHS because they believed that RWHS had fostered an unsafe work environment for black employees.

28. Following his departure from RWHS, RWHS asked Mr. Marshall to sign a statement saying that there were no issues with racial hostility at RWHS. Mr. Marshall refused to sign the statement.

29. The racially motivated attack upon Mr. Branch as a result of Mr. Branch making complaints about racial hostility, the failure of RWHS to terminate the attacking employee, the unmitigated use of racial slurs at work, and the adverse employment conditions to which Mr. Marshall was subjected, created intolerable working conditions, which no reasonable person would be expected to endure.

30. Because of the racially motivated attack, along with the discrimination experienced by himself and his black coworkers, and RWHS's apparent unwillingness to address the

consistent use of racial slurs in the work environment, Mr. Marshall felt that RWHS had fostered a racially hostile work environment and that he could not return.

31. Upon information and belief, the events described above caused all or substantially all of the black employees at RWHS to leave their employment.

## COUNT I
### Discrimination on the Basis of Race in Violation of Title VII

32. Plaintiff incorporates the preceding paragraphs as if set for completely herein.

33. Mr. Marshall is a member of a protected class.

34. Mr. Marshall performed his job for RWHS in a satisfactory manner.

35. Mr. Marshall was subject to adverse employment actions, such as receiving restricted hours, not being allowed to work during the rain, which resulted in less pay, and not having access to the equipment yard, making him reliant on his white coworkers to clock in.

36. The adverse employment conditions described applied uniformly to RWHS's black employees, but not the white employees.

37. The discrimination against Mr. Marshall and other black coworkers, coupled with RWHS's failure to adequately address racial hostility in the workplace or punish the employee that attacked Mr. Branch, resulted in Mr. Marshall's constructive termination.

## COUNT II
### Racially Hostile Work Environment in Violation of Title VII

38. Plaintiff incorporates the preceding paragraphs as if set for completely herein.

39. RWHS subjected Mr. Marshall to unwelcome conduct by allowing white employees to use racial slurs against him and his black coworkers in the work environment.

40. The unwelcome conduct to which Mr. Marshall and his coworkers were subjected was based on their race.

41. The unwelcome conduct was pervasive in that Mr. Marshall and all or nearly all of the other black employees at RWHS had been subjected to the use of racial slurs.

42. Mr. Marshall attempted to address the racial hostility in the workplace by reporting the issues to his superior, Mr. Branch. However, Mr. Branch's interactions with the superiors at RWHS made clear that no solution would be offered.

43. RWHS did not take reasonable steps to prevent or promptly correct racist behavior among its white employees.

44. The unwelcome conduct culminated in a severe racially motivated physical attack against a black coworker, which went unpunished.

45. The racially hostile environment created and maintained by RWHS was sufficient to cause a reasonable person in Mr. Marshall's position to leave the employment, thus constituting a constructive termination on the basis of race.

## COUNT III
### Discrimination on the Basis of Race in Violation of the Virginia Human Rights Act and Virginia Values Act

46. Plaintiff incorporates the preceding paragraphs as if set for completely herein.

47. Virginia Code § 2.2-3902 states that any conduct that violates federal law governing discrimination on the basis of race also constitutes an unlawful discriminatory practice under Virginia law.

48. Mr. Marshall alleges violations of federal law pursuant to Title VII. Accordingly, he has also alleged violations of Virginia law.

WHEREFORE, based upon the foregoing, Plaintiff demands judgment against the defendant, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), for compensatory damages, as well as punitive damages pursuant to Virginia law in the amount of

THREE-HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00), together with costs incurred in the pursuit of just resolution of this matter, prejudgment and post-judgment interest, and attorneys' fees, as well as any such further and additional relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

                                                  Respectfully Submitted,

                                                  _____/s/_____
                                                  Seth R. Carroll (VSB No. 74745)
                                                  Connor Bleakley (VSB No. 92113)
                                                  Commonwealth Law Group, LLC
                                                  3311 West Broad Street
                                                  Richmond, VA 23230
                                                  Phone/Fax: (804) 201-4969
                                                  cbleakley@hurtinva.com